## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| | ) |
| **v.** | ) **2:17-cr-00147-JDL-1** |
| | ) |
| **SEAN MULKERN,** | ) |
| | ) |
| **Defendant.** | ) |

### ORDER ON DEFENDANT'S MOTION FOR RECONSIDERATION

Defendant Sean Mulkern was charged by indictment on October 18, 2017 with possession of a controlled substance with intent to distribute in violation of 21 U.S.C.A. § 841(a)(1), (b)(1)(B) (West 2021), possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C.A. § 924(c)(1)(A)(i) (West 2021), and as a felon in possession of a firearm in violation of 18 U.S.C.A. 922(g)(1), 924(a), (e) (West 2021) (ECF No. 1). Mulkern sought to suppress all of the evidence and statements obtained by the police as a result of a stop of his vehicle and search of his person and vehicle, and all of the evidence obtained thereafter following the issuance of a search warrant (ECF No. 31, 33). Following a hearing, Mulkern's motion to suppress was granted in part and denied in part (ECF No. 82).

Mulkern conditionally pleaded guilty to the possession with intent to distribute charge and the felon in possession charge on March 14, 2019, and he is awaiting sentencing. He now brings the instant motion, urging this Court to reconsider its previous ruling denying in part his motion to suppress (ECF No. 129). I held a

hearing on the motion on February 9, 2021.  For the reasons that follow, I deny the motion for reconsideration.

## I. BACKGROUND

A full recitation of the facts is available in my Order on Mulkern's motion to suppress (ECF No. 82).  I summarize the key facts here.

### A.    The Timberline Country Store Incident

On May 24, 2017, two Buxton police officers—Officers Jessica Ramsay and Warren Day—responded to a dispatch call regarding a reported incident involving road rage and a threat with a gun at the Timberline Country Store in Buxton.  The 911 dispatcher relayed a report that the driver of a white Corvette with red rims had pulled a gun on a man at the store.  The driver was described as a thin male wearing a white shirt and baseball cap.  The dispatcher also provided the Maine motor vehicle registration number for the Corvette, which had left the scene.  The dispatcher advised, however, that the Maine registration number provided, "2512 VW," was assigned to a black Lexus, and not a white Corvette.

While en route to the store, Officer Day spoke by phone to the individual who made the 911 call, and was told that a man in a white Corvette had pulled out a gun and threatened him with it.  At the store, Officer Ramsay viewed the store's surveillance video, which showed that following an initial verbal altercation with three men, the white male driver of the white Corvette—which had red stripes running the length of the vehicle and red rims—reached for an unidentifiable object and held it at the center of his chest.  The video showed that upon seeing this object, the behavior of the three men became elevated and they started yelling and pointing.

2

Due to the quality of the video, however, Officer Ramsay could not confirm that the object was a gun.  Officer Ramsay also spoke to a store employee who had witnessed the incident.  The employee described seeing a skinny man around fifty years of age operating a white car with two red stripes get into an altercation with three men.

After the investigation at the store, Office Ramsay issued a "be-on-the-lookout" bulletin to the statewide police broadcast, which read:

> *** Caution Officer Safety ***
> On today[']s date Buxton Police Department took a report of a male in a white Corvette with red rims [who] was in a[n] altercation at Timberline Country Store 222 Narragansett Trail. The operator[,] a male in his 40's white shirt and ball cap, pulled out a hand gun and showed it to the victim. The vehicle was last seen headed toward Gorham. If located stop and identify the driver.
> Thank you for any assistance.

## B.   The Traffic Stop, Search, and Arrest

On May 25, 2017, at approximately 2:15 p.m., Sgt. Timothy Morrell of the Westbrook Police Department, who had read the bulletin, spotted a white Corvette with red rims in Westbrook.  The Corvette matched the description from the Bulletin, and it bore Maine registration 2513 VW.  Sgt. Morrell ran a search of the Corvette's registration number in the Bureau of Motor Vehicles ("BMV") database, which identified Sean Mulkern as the registered owner.  Sgt. Morrell observed that the driver was a white man in his forties wearing a baseball cap. He then contacted the Buxton Police Department and spoke with Chief Troy Cline, who confirmed that the Corvette's registration was one digit off from the registration number 2512 VW that had been reported the previous day.  This led Sgt. Morrell to believe that the Corvette was the same vehicle identified in the bulletin.

Sgt. Morrell continued his surveillance of the Corvette, which was now parked in the driveway of a residence, and he also ran a criminal background check on Mulkern, which revealed that he was a convicted felon with a history of drug-related charges.   After observing Mulkern standing outside the Corvette, Sgt. Morrell positively identified Mulkern based on a photograph of Mulkern in the Bureau of Motor Vehicles database.

Sgt. Morrell was joined by two additional Westbrook police officers to assist with surveillance.  After observing Mulkern getting into the Corvette, beginning to back out of the driveway, and then abruptly changing the direction of his car so as to travel away from the police officers, Sgt. Morrell intuited that Mulkern had spotted the police cruiser.  At that point, Sgt. Morrell and another officer approached the Corvette, ordered Mulkern out of the vehicle, and directed him to place his hands on the rear of the car.

In an ensuing pat down search, one of the officers felt an object which he recognized to be a hypodermic needle in Mulkern's jacket pocket.  When the officer asked if the object was a needle, Mulkern replied "no" and then reached for his pocket. At that point, the officer placed Mulkern in handcuffs and removed the needle. In response to further questions, Mulkern stated that the needle was not his and was unused.

The officer believed that the needle was drug-related contraband and continued searching Mulkern.  He felt a package of cigarettes in Mulkern's jacket pocket, which he removed.  The package contained what appeared to be a crystal of crack cocaine.  Mulkern volunteered that "[t]his is mine . . . the needle isn't."  The

officer then asked Mulkern why he was fidgety, and Mulkern replied that he didn't want to get in trouble for a "little piece of crack."

The officer then conducted a search of the Corvette, and discovered several baggies of what appeared to be crack cocaine and a large amount of cash.  Mulkern stated, unprompted, "[t]here you go, you got it right there," or words to that effect. An officer then read Mulkern *Miranda* warnings, and Mulkern was placed in a police cruiser.  A .9mm handgun was also ultimately found in the Corvette.

During the course of the vehicle search, Officer Ramsay and Officer Day arrived at the scene to interview Mulkern about the Timberline incident.  Officer Day also read *Miranda* warnings to Mulkern, who responded that he was not in Buxton the prior day and was not going to answer any questions.

Later that day, an agent of the Maine Drug Enforcement Agency obtained a warrant to search a Winnebago registered to Mulkern.  In the Winnebago, agents found additional drugs, drug paraphernalia, and firearms.  The warrant affidavit was based in part on the evidence and statements obtained during Mulkern's stop and arrest on May 25, along with a proffer statement made by an informant eight days earlier and a statement given by an occupant of the residence where Mulkern was parked immediately prior to the stop and search.

## C.    The Original Motion to Suppress and Order

In his motion to suppress, Mulkern argued that (1) the traffic stop of his vehicle was an unreasonable search and seizure under the Fourth Amendment, and all of the evidence discovered during and as a result of the search must be suppressed; (2) even if the traffic stop was lawful, the search of his person was not, and all of the evidence

discovered during that search, as well as the evidence discovered pursuant to the search warrant, must be suppressed; and (3) any statements he made after being handcuffed and before he was read his *Miranda* rights must be suppressed because he was in custody.

I determined that the stop of Mulkern's car and the searches that followed were supported by probable cause to arrest Mulkern for the crime of having been a felon in possession of a firearm during the Timberline incident on May 24, 2017. I noted that the collective information available to the police gave them a reasonable basis to believe that: (1) the operator of the Corvette was in possession of a firearm at the Timberline on May 24, 2017, (2) Mulkern was that person who had been operating the Corvette at the Timberline, and (3) Mulkern was a convicted felon. I further noted that because there was probable cause to arrest Mulkern for being a felon in possession of a firearm, the officers had sufficient cause to conduct searches of both Mulkern's person and his vehicle. I noted that there was no reason under the Fourth Amendment to suppress Mulkern's unsolicited statements made in reaction to those searches, nor was there any reason to invalidate the warrant, which was based on evidence obtained as a result of those searches. However, I did suppress all of Mulkern's non-spontaneous statements made in response to, or prompted by, the questioning that took place after the crystal of cocaine was found on Mulkern's body and before he was read a *Miranda* warning, as I found that those statements were obtained in violation of the Fifth Amendment.

Mulkern now asks that I reconsider my order denying in part his motion to suppress. He cites what he characterizes as newly discovered evidence in the form of

a portion of the dashcam video footage of the search of the Corvette—which was included in the video evidence received and admitted during the suppression hearing—showing one of the officers removing a license plate reading "6163 PV" from the trunk area of the vehicle.  He also submits several documents associated with his registration of the Corvette at the Scarborough Branch of the BMV on May 24, 2017,[1] and two records of inquiries made by the Buxton Police Department.  One of these records shows a query by a Buxton Police dispatcher at 2:24 p.m. on May 25, 2017 regarding license plate number 2513 VW which indicates that it belongs to the white 1989 Corvette registered to Mulkern.  The other shows a query by Officer Ramsay at 6:37 p.m. on May 25, 2017 regarding license plate number 2512 VW, which indicates that it belongs to a black 2015 Lexus registered to another individual.  The Government does not object to the Court's receipt and consideration of these documents, and it has submitted a State of Maine Vehicle Registration document showing that the 2513 VW license plate was registered to Mulkern as early as February 24, 2017, as well as a document generated by the Buxton Police Department's Court Officer/Crime Analyst on the morning of the hearing which indicates that the 2513 VW plate was run by Buxton Police on May 24, 2017 at 3:54 p.m.  Mulkern does not object to the Court's receipt and consideration of the Government's additional exhibits.

---

[1] These include a bill of sale for the Corvette dated May 23, 2017; a receipt from the Scarborough Branch of the BMV indicating that he paid an $8.00 transfer fee on May 24, 2017 at 4:45 p.m.; a vehicle registration document for a white 1989 Corvette with the registration number 2513 VW titled "New-Registration Transfer"; correspondence from the BMV dated April 30, 2020 regarding Mulkern's transactions on May 24, 2017; correspondence from the BMV dated July 17, 2020 regarding Mulkern's transactions on May 24, 2017; and a temporary insurance card dated May 24, 2017.

## II. LEGAL STANDARD

"[M]otions for reconsideration in criminal cases are not specifically authorized either by statute or by rule." *United States v. Ortiz*, 741 F.3d 288, 292 n.2 (1st Cir. 2014). However, the First Circuit has applied standards derived from the Federal Rules of Civil Procedure in analyzing motions for reconsideration submitted in criminal cases. *See United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009) (considering a motion for reconsideration of a motion to suppress); *see also United States v. Peña-Fernández*, 394 F. Supp. 3d 205, 207 (D.P.R. 2019).

"[M]otions for reconsideration are appropriate only in a limited number of circumstances: if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust." *Allen*, 573 F.3d at 53 (citing *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 7 n.2 (1st Cir. 2005)). "A court will deny a motion for reconsideration based on the 'new evidence' exception if that evidence 'in the exercise of due diligence[] could have been presented earlier.'" *Id.* (quoting *Emmanuel v. Int'l Bhd. of Teamsters, Local Union No. 25,* 426 F.3d 416, 422 (1st Cir. 2005)). Additionally, a showing that the original decision was clearly unjust is "difficult to achieve" and "requires a definite and firm conviction that a prior ruling on a material matter is unreasonable or obviously wrong." *Ellis v. United States,* 313 F.3d 636, 648 (1st Cir. 2002).

"Motions for reconsideration are not to be used as 'a vehicle for a party to undo its own procedural failures [or] allow a party to advance arguments that could and should have been presented to the district court prior to judgment.'" *Allen*, 573 F.3d

at 53 (alteration in original) (quoting *Iverson v. City of Bos.,* 452 F.3d 94, 104 (1st Cir. 2006)).

## III. DISCUSSION

I address Mulkern's reconsideration motion by first deciding whether the evidence submitted is newly discovered, and then considering whether the proffered evidence leads to factual findings that are different than those set forth in my December 7, 2018 Order on Mulkern's Motion to Suppress and that would render that decision clearly unjust.

## A.    Newly Discovered Evidence

The evidence that Mulkern proffers as "newly discovered" consists of dashcam footage from the May 25, 2017 search of the Corvette, along with documents related to Mulkern's purchase of the Corvette on May 23, 2017 and his registration of the Corvette on May 24, 2017**,** and records of two license plate inquiries made by the Buxton Police Department.

Mulkern contends that the portion of the dashcam footage beginning at minute 23:14 of the video, which depicts an officer removing a license plate reading "6163 PV" from the area behind the front passenger seat of the Corvette, was so difficult to discover that "it was as if this evidence did not exist."  ECF No. 129 at 7.  He notes that "discovery of th[e] evidence was no easy task" as it required reviewing multiple hours' worth of video footage, and that the 6163 PV license plate was not mentioned in any police reports or other discovery materials.  *Id.*  Accordingly, he contends that this evidence is "newly discovered."  *Id.*

9

Mulkern acknowledges that the dashcam video was provided to him by the Government and that the entire video was admitted as evidence at the hearing on the motion to suppress.  While the few seconds in the video that depict the officer removing the 6163 PV license plate from the Corvette are no doubt fleeting, the officer's actions and the license plate itself are plainly visible.  This portion of the video falls squarely in the category of evidence that, "in the exercise of due diligence[] could have been presented earlier." *Allen*, 573 F.3d at 53.  Indeed, the entire video actually was presented earlier at the hearing on the motion to suppress, although neither party focused their arguments on the few seconds now at issue.  Regardless of whether the portion of the video depicting the removal of the license plate is characterized as evidence which was actually presented earlier or evidence which in the exercise of due diligence could have been presented earlier, the evidence is not newly discovered.

The same conclusion applies to the various motor vehicle documents related to Mulkern's purchase and registration of the Corvette.  Mulkern notes that the evidence relating to his registration of the Corvette was not within his "custody and control" at the time he filed his motion to suppress, and that he had no need to obtain these documents until he discovered the dashcam video showing the retrieval of the 6163 PV license plate.  ECF No. 137 at 3.  Again, however, Mulkern presents no plausible reason why he could not have completed the investigative steps of watching the dashcam video, discovering the allegedly important footage of the 6163 PV license plate, and requesting the relevant documents from the BMV prior to the suppression hearing.  Mulkern does not allege any delay or reluctance on the part of the BMV to

furnish the records, and he was clearly aware of their existence since it was his actions that led to the creation of the documents. Again, this evidence could have been obtained earlier, and therefore it is not newly discovered.

As to the records of the two license plate inquiries made by the Buxton Police Department—which Mulkern filed on the morning of the hearing on the motion for reconsideration, separately from the motion itself—Mulkern has provided no explanation as to where or how he obtained these documents. At the hearing on the motion for reconsideration, the Government contended that these records were available to Mulkern at the time of the suppression hearing, which Mulkern did not dispute. Thus, this evidence is also not newly discovered.

**B.    If Considered, the Evidence Does Not Affect the Court's Factual Finding that Mulkern was the Operator of the White Corvette on May 24, 2017, and Does Not Render the Order Denying the Motion to Suppress Clearly Unjust**

Mulkern argues that the newly proffered evidence supports his motion to suppress in three ways: first, by establishing an alibi defense by showing that he was at the BMV at the time of the Timberline incident, second, by showing that the 2513 VW license plate could not have been on the Corvette at the time of the incident at the Timberline Country Store, and third, by showing that the police did not know what license plate belonged to the Corvette involved in the Timberline incident on May 24, 2017. According to Mulkern, these final two points indicate that the officers lacked probable cause to arrest Mulkern at the time of the stop on May 25 for having been a felon in possession of a firearm on May 24. Ultimately, Mulkern appears to

argue that his newly proffered evidence renders my December 7, 2018 Order on the Motion to Suppress clearly unjust.  His argument is unpersuasive.

Mulkern correctly notes that the registration documents from the BMV indicate that he registered the Corvette at the BMV's Scarborough branch on May 24, 2017 at 4:45 p.m.  The correspondence from the BMV further indicates that Mulkern may have arrived at the BMV at 4:24 p.m.  However, Mulkern's contention that this was "the very day and time he was allegedly seen driving a Corvette and getting into an encounter in Buxton" is contrary to the evidence.  ECF No. 129 at 6-7.

At the suppression hearing, Officer Ramsay testified that she was first alerted to the incident at the Timberland Country Store at 3:58 p.m., and that the 911 call initially came in at 3:52 p.m.[2]   Citing MapQuest, the Government has posited that the drive from the Timberline Country Store to the Scarborough Branch of the BMV takes approximately nineteen minutes.  Mulkern did not dispute this contention in his reply or at the hearing.[3]  While Mulkern argues that it is unlikely that the same individual involved in the Timberline incident could have been at the BMV by 4:24 p.m., in reality more than thirty minutes passed between the 911 call and the time

___

[2] In its opposition, the Government notes that Officer Ramsay's report indicates that she was notified of the incident at 2:58 p.m.  However, at the suppression hearing, Officer Ramsay testified that she was actually notified at 3:58 p.m.

[3] Federal Rule of Evidence 201(a)(2) permits courts to take judicial notice of a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See also Rindfleisch v. Gentiva Health Sys., Inc.*, 752 F. Supp. 2d 246, 259 n.13 (E.D.N.Y. 2010) (explaining that courts "commonly use internet mapping tools to take judicial notice of distance and geography").

12

the BMV estimates that Mulkern arrived to register his vehicle—more than enough time for Mulkern to drive from the Timberline Country Store to the BMV.

Mulkern's contention that the 2513 VW license plate could not have been on the Corvette at the time of the Timberline incident is no more persuasive. Mulkern argues in his motion for reconsideration that the documents from the BMV reveal that he was not driving with the 2513 VW license plate on the Corvette on May 24, 2017. However, as the Government notes, the BMV documents indicate that Mulkern simply transferred his license plate number at the BMV. In keeping with Maine law, a person "who transfers the ownership or discontinues the use of a registered motor vehicle" and who "applies for registration of another motor vehicle" may "use the same number plates on payment of a transfer fee of $8." 29-A M.R.S.A. § 502(1) (West 2021).

Based on the $8.00 fee that Mulkern paid to the BMV and the fact that the vehicle registration document is titled "New-Registration Transfer," ECF No. 129-1 at 5, it appears highly likely that Mulkern possessed the 2513 VW license plate prior to when he registered the Corvette on May 24, 2017. This fact is made even more certain by the document submitted by the Government at ECF No. 132-1, which establishes that Mulkern had been assigned the 2513 VW license plate prior to May 24, 2017. The fact that police officers discovered another license plate—6163 PV—in the Corvette behind the front passenger seat as documented in the dashcam video does not detract from this finding. In short, Mulkern offers no evidence to indicate that the 2513 VW license plate was not on the Corvette at the time of the Timberline incident.

Finally, Mulkern's argument that the two license plate queries reveal that the police did not know what license plate was on the Corvette involved in the Timberline incident on May 24, 2017 is not consistent with the evidence presented at the suppression hearing.  The first query as to the Corvette on May 25, 2017 at 2:24 p.m. is entirely consistent with the evidence that the Corvette had been spotted by Sgt. Morrell roughly ten minutes earlier, and that Sgt. Morrell had contacted the Buxton Police Department to confirm that the Corvette's registration was one digit off from the number that had been reported the prior day.  The second query as to the 2512 VW plate which came roughly three hours after Mulkern's arrest also does not contradict the factual findings that I made in my December 7, 2018 Order.  The police may have looked up the 2512 VW plate for any number of reasons which are consistent with my initial factual findings.

Accordingly, the new evidence proffered by Mulkern, even if admitted, has no effect on the findings of fact contained in my Order dated December 7, 2018, nor does it change the outcome of the probable cause analysis.  Accordingly, I conclude that that decision was just and does not merit reconsideration.

## IV. CONCLUSION

For the reasons stated above, Mulkern's Motion for Reconsideration (ECF No. 129) is **DENIED**.

**SO ORDERED.**

Dated:  April 5, 2021

_____/s/ JON D. LEVY_____
**CHIEF U.S. DISTRICT JUDGE**

14